## REEVES et al. v. LANGFORD.

No. 26222.    June 1, 1937.

Rehearing Denied Sept. 28, 1937.

Application for Leave to File Second Petition for Rehearing Denied Nov. 2, 1937.

but we have failed to observe wherein the case-made before us is deficient in any respect for a determination of the matters presented upon the merits of the case.

The defendants have made a proper showing that some of the records and files became lost without fault on their part, and that they were unable to supply or substitute the same from memory or otherwise. Even so, the defendants have failed to show wherein any such lost instruments would disclose prejudicial error in the former trial. A reference to the applicable provision of our statute above referred to discloses that it must be shown that the impossibility of making a complete case-made affects materially the substantial rights of such parties. The trial court overruled the motion by general order. It may be assumed that the trial court inquired into the question of whether or not the defendants' substantial rights were materially affected by reason of their inability to incorporate these lost instruments in the case-made, as was its province and duty to do, and that in the exercise of its legal discretion, the court rightfully concluded that the defendants had failed to show wherein the loss of such records materially affected any substantial right as contemplated by the statute under which they claim. We find no error in this regard.

Plaintiff's suit was for damages for breach of contract. The cause was tried to a jury, resulting in a verdict and judgment in favor of plaintiff for $2,600. The defendants' second proposition here urged is stated in their words as follows:

"The record discloses a claim on the part of the defendants in error based upon an alleged agreement which, if true, would constitute a violation of the banking laws of this state and would be against public policy, and therefore could not in any sense serve as a legal basis for the entry of any judgment against the bank."

A consideration of this proposition necessitates some considerable detailed statement of facts; they appear substantially as follows: Prior to October, 1931, plaintiff was indebted to the defendant bank, of which the defendant Reeves was the principal managing officer. Plaintiff was beneficiary under the terms of a $5,000 life insurance policy issued upon the life of his wife. This policy required premium payments of $42 quarterly. Plaintiff desired to borrow funds of the bank for payment of some of these premiums, or a premium note. An agreement was reached between plaintiff

W. C. Austin, T. M. Robinson, R. D. Miller, and Harry C. Hicks, for plaintiffs in error.

Gomer Smith and J. W. Watson (M. J. Parmenter, of counsel), for defendant in error.

WELCH, J. The parties will be referred to as plaintiff and defendants, as they appeared in the court below, where Langford was plaintiff, and Reeves and the First State Bank & Trust Company, a corporation, of Hollis, Okla., were defendants.

Defendants first urge that the trial court committed reversible error in refusing to grant a new trial requested on the ground of inability to make and serve a case-made. The motion on this ground was predicated on section 398, O. S. 1931, and subdivision 9 thereof. It is shown that certain motions and other pleadings, together with certain requested instructions, were lost through no fault of the parties desiring to appeal.

The case-made here contains substituted petition, together with answer and a complete record of all of the testimony and action taken by the trial court upon trial, and the material substance of the verdict of the jury.

Only two propositions are called to our attention wherein it is in any wise claimed by the defendants that the trial court committed error. The parties have presented rather exhaustive briefs relative to the matters which defendants assert as error,

and the defendant Reeves whereby the insurance policy was assigned to the bank. The assignment appears to be as security for something over $1,260, which the plaintiff seems to have owed the bank at the time of the assignment, and it further provides that the assignee's interest shall apply to any additional sums which the policyholder and the beneficiary might owe the bank at the time of any settlement under the policy. At the time of this assignment the plaintiff's wife was dangerously ill and confined to her bed. Her attending physician advised both the plaintiff and the defendant that the insured could only be expected to live a short time. It is the plaintiff's theory that the assignment and delivery of the policy to the bank was had and made with the express and distinct agreement on the part of the bank that it would continue the payments of the premiums due on the policy, and would hold the policy as collateral security for the payment of the indebtedness existing at the time the assignment was made and for additional premiums which the bank would advance. That, although such was the contract and agreement, after the payment of some two or three premiums the bank refused to make further premium payments, and refused to release the assignment or to deliver the policy to plaintiff, by reason whereof the policy lapsed.

It is plaintiff's contention further that upon the defendant's refusal to pay the premiums as it had agreed to do, the plaintiff made other arrangements to borrow money for the payment thereof, and would have been able to do so if the defendant had delivered the policy to him and released the assignment theretofore made so that such policy could have been used to secure the loan of other funds for the payment of premiums.

It is the defendant's contention that the assignment of the policy was taken solely as security for the debt which the plaintiff already owed the bank and such additional debt as might be thereafter due, but that it did not agree to make any future premium payments, and that it did not agree to continue the payments of premiums up to such time as the death of plaintiff's wife might occur.

Something over one year after the assignment the insured, plaintiff's wife, died. At the time of her death the policy had lapsed and was not then in force and effect.

There was introduced in evidence an answer of the plaintiff, Langford, filed in another case pending in the same court, wherein the bank was seeking foreclosure of a chattel mortgage given as security for this same debt. It is urged that this answer, together with the other testimony and admissions on the part of the plaintiff, disclosed that the agreement entered into concerning the insurance policy was in violation of the banking laws and the public policy of the state, and therefore void. We have given careful attention to the testimony concerning the agreement of the parties and conclude that the evidence is such as to warrant a finding that the agreement was not in violation of the law. Defendants say that the evidence disclosed an admission on the part of Langford by which he is bound, to the effect that the notes referred to were not intended to represent any liability, but were executed for the purpose of concealing the condition of the bank from the bank examiner; that the purported agreement on the part of bank reflected an investment of the funds of the bank in the life insurance policy contrary to the law, and, finally, that the purported agreement was so indefinite as to when or how the bank was to recover its funds advanced as to render the contract void.

The evidence, as the same relates to those contentions, may fairly lead to the conclusion that the bank, being desirous of better securing its debt against Langford, and being informed and believing that the policy of life insurance would mature shortly, made the agreement that Langford contends it did make, and that the assignment of the policy was not an investment of the bank's funds in the anticipated proceeds therefrom, but the same was taken by the bank in its efforts to better secure the indebtedness, and under circumstances which reasonably led the parties to believe that such action would shortly enable the bank to collect the full amount of its debt against Langford. It must be remembered also that if the bank considered that it was engaged upon an unlawful enterprise, or if for any reason it elected to refuse further payment of premiums, it might easily have complied with Langford's request to release the assignment and return the policy to him so that he might make other arrangements for the payment of the premiums. It could have, and should have easily foreseen that if the premiums were not paid, it could obtain no benefit from the policy by retaining the assignment. We do not feel

that the bank should here say that its officers entered into an unlawful contract, and although the other party to the contract sought to discontinue the same, it refused to do so when such refusal could profit it nothing, and could result only in the loss of benefits under the policy to all parties.

Defendants next contend that the verdict is not supported by the evidence. This for the reason that plaintiff sought damages and that his evidence would appear to support the claim of approximately $5,000, or nothing. The verdict was for $2,600, for which judgment was rendered.

In support of this contention defendants call our attention to Thompson v. Burtis et al. (Kan.) 70 P. 603; Earley et al. v. Johnson, 58 Okla. 466, 160 P. 482; McKeel v. Mercer et al., 167 Okla. 413, 29 P. (2d) 939; Malvy v. Lamberton et al., 113 Okla. 168, 240 P. 716, and Dick v. St. Louis-San Francisco Ry. Co., 168 Okla. 223, 32 P. (2d) 273.

We consider the applicable rule in such cases to be as stated in 31 A. L. R. 1093, as follows:

"Where action is brought on an express contract to recover unliquidated damages for the breach thereof, the appellant cannot complain that the verdict rendered against him is less than the evidence warrants."

The action here was to recover an unliquidated claim of damages for breach of contract. In Simons v. Harber et ux., 116 Okla. 233, 243 P. 510, plaintiff sued to recover the sum of $1,500 as damages for alleged failure of defendant to procure the consent of a fire insurance company to a mortgage placed upon the property. The jury found in plaintiff's favor and awarded him the sum of $750. We quote from the opinion as follows:

"The contention that the verdict is contrary to the evidence and contrary to the law cannot be sustained, as the plaintiffs' evidence fully supports the allegations of the petition and the verdict of the jury, and their further contention that the plaintiffs were entitled to the full amount of the policy in the sum of $1,500 or were entitled to nothing and that the verdict for $750 is contrary to law is not tenable. It is our opinion that the defendant cannot be heard to complain because the jury in its verdict did not give the plaintiffs enough, but that the verdict was smaller than they were entitled to. This might be cause for complaint by the plaintiffs, but it is not available to and furnishes no grounds for reversal by the defendant."

To the same effect are the following cases: Combs v. Langston Investment Co., 100 Okla. 21, 227 P. 94; Fagras v. Marks, 171 Okla. 413, 43 P. (2d) 108, and Dunning v. Studt, 51 Okla. 388, 151 P. 1066.

It may be that the jury became confused in its effort to calculate the amount of damages, in view of the fact that the plaintiff appears to have owed the bank certain sums of money, or the apparent miscalculation may have occurred otherwise, and it may be that therein the jury erred. It is not made to appear, however, that the defendants' rights were prejudiced thereby, and under the last above cited authorities, we hold that the defendants have no just complaint.

Finding no reversible error, the judgment is affirmed.

OSBORN, C. J., and PHELPS, CORN, and HURST, JJ., concur.